Dear Mr. Johnston,
The Attorney General has received your request for an official opinion asking, in effect:
 1. Are student loans guaranteed by the Secretary of Education "direct obligations of or obligations whose principal and interest are guaranteed by the United States" as contemplated in 70 O.S. 695.13 (1981), so the Oklahoma Student Loan Authority may acquire such loans, as an investment from private lenders?
 2. In light of the provisions of 70 O.S. 695.6 and 70 O.S. 695.17 (1981), is the Oklahoma Student Loan Authority authorized to make guaranteed loans to parents with students as the beneficiary of the proceeds?
 3. Can so-called Health Education Assistance Loans (HEAL) guaranteed by the Secretary of Health and Human Services by congressional action subsequent to the most recent amendment to the Oklahoma Student Loan Act be viewed as loans eligible for funding by the Oklahoma Student Loan Authority under 70 O.S. 695.16 (1981), notwithstanding provisions of 70 O.S. 695.17 (1981)?
 4. Are "HEAL" loans guaranteed by the Secretary of Health and Human Services direct obligations of or obligations whose principal and interest are guaranteed by the United States as contemplated in 70 O.S. 695.13 (1981) so the Oklahoma Student Loan Authority may acquire such loans, as an investment, from private lenders?
 I.
You ask whether the Oklahoma Student Loan Authority (OSLA) may participate as a secondary market for either guaranteed student loans or federally insured student loans.
Your question indicates that this participation is to be accomplished pursuant to 70 O.S. 695.13 (1981), which provides in part:
 "A. Money in the `Student Loan Sinking Fund' and money in the Student Loan Fund in excess of the amount necessary for student loans may be invested by the Authority [Oklahoma Student Loan Authority] in:
 "1. Direct obligations of or obligations whose principal and interest are guaranteed by the United States[.]"
Two issues must be resolved in order to answer your question. First, is the Secretary of Education included within the meaning of the United States. Second, are these student loans "direct obligations of or obligations whose principal and interest are guaranteed by the United States." 70 O.S. 695.13 (1981).
The first issue is resolved by the language in 70 O.S. 695.17 (1981) which refers to loans insured or coinsured by the United States under the Higher Education Act of 1965. These are the loans at issue and it is apparent that the Legislature viewed insurance by the Secretary of Education as being synonymous with the United States.
The Guaranteed Student Loan Program (GSLP) is defined in34 C.F.R. § 682.100:
 "(a) The Guaranteed Student Loan Program (GSLP) makes low interest loans available to students to pay for their costs of attending post-secondary schools. Lenders loan their own funds, and the Federal Government or a guarantee agency insures against loss. The program has two parts: guarantee agency programs and the Federal Insured Student Loan Program (FISLP).
 "(1) State agencies or private nonprofit agencies guarantee loans and are reimbursed by the Secretary for part or all of the insurance claims they pay to lenders. Guarantee agency programs must meet certain Federal requirements, but there may be considerable variation among programs in such areas as loan maximums and student eligibility.
 "(2) The FISLP operates in states not served by guarantee agencies and in certain prescribed circumstances in which a guarantee agency program does not serve all eligible students in a State. The Secretary directly insures lenders against losses on FISLP loans.
* * *
 "(c) Repayment. The student who borrows under the GSLP is obligated to repay the lender the full amount borrowed, plus interest. Generally the Secretary pays the interest while the student is in school and during certain other periods. The student pays the interest during the time he or she is repaying the loan. When a student leaves school or is enrolled less than half-time, a grace period begins. After the grace period, which may last from 9 to 12 months, the student generally begins repayment. In some cases repayment may be deferred for a time, but the student still is responsible for repaying the entire loan amount plus interest. The student's obligation to repay is canceled only if the student dies or becomes totally and permanently disabled or if the loan is discharged in bankruptcy." (Emphasis added).
Section 682.100(c) states that "[t]he student who borrows under the GSLP is obligated to repay the lender [or its assignee] the full amount borrowed, plus interest." Clearly, such loans are not direct obligations of the United States. Are they, then, obligations whose principal and interest are guaranteed by the United States?
The answer to this question depends upon whether the insurance backing the student loans is the equivalent of a guarantee. Guarantee means "to undertake to answer for the debt, default, or miscarriage of," Webster'sNew Collegiate Dictionary, p. 505 (1981), and insurance means "coverage by contract whereby one party undertakes to indemnify or guarantee another against loss[.]" Id. at 594. It would seem that such insurance can be the equivalent of a guarantee.
According to the language previously quoted from Section 682.100, the Secretary of Education either insures directly or indirectly lenders from loss. In the FISLP, the Secretary directly insures lenders against losses, and in the GSLP, the Secretary indirectly insures lenders against losses. This indirect insurance is accomplished pursuant to a reinsurance agreement between the Secretary and the guarantee agency.34 C.F.R. § 682.101. Lenders holding GSLP student loans that are in default are paid in full by a guarantee agency, which may be either a state agency or non-profit corporation meeting the qualifications established by the Secretary. Id. In turn, the guarantee agency, pursuant to the reinsurance agreement, is reimbursed by the Secretary. One caveat, however, is that this reimbursement commitment by the Secretary is limited to 80 percent of the guarantee agency's total default losses, unless the agency has met additional requirements of the Secretary. If the guarantee agency has met the additional requirements, the Secretary will pay up to 100 percent of its default losses. Id. This limitation in the GSLP prevents student loans guaranteed by agencies having only 80 percent protection from the Secretary from being "obligations whose principal and interest are guaranteed by the United States." 70 O.S.695.13 (1981).
The reason for this is not immediately apparent because the holder of such loans will be paid by the guarantee agency if the loans go into default. OSLA's statute, however, requires the obligation to be guaranteed by the United States and if the Secretary's commitment to reimburse is limited to 80 percent of an agency's default losses, then not all of the loans are "guaranteed" by the commitment of the Secretary.
A similar limitation exists for certain FISLP loans. In general, the Secretary's insurance liability for such loans is 100 percent. However, where a state lender is involved, this liability may be less than 100 percent if certain factors occur. See, 34 C.F.R. § 682.501. These factors are unimportant for this opinion; what is important is that the Secretary's commitment is less than 100 percent. Loans of state lenders not qualifying or in danger of losing qualification for 100 percent protection should not be purchased by OSLA.
Thus, it seems that OSLA may act as a secondary market pursuant to 70O.S. 695.13 (1981) to the extent that the loans are fully insured against loss in the event of default either directly by the Secretary of Education or indirectly by the Secretary pursuant to a reinsurance agreement providing for 100 percent reimbursement by the Secretary to the guarantee agency. Purchase of loans, where less than 100 percent reimbursement is assured, is not permitted by 70 O.S. 695.13.
Also in keeping with 70 O.S. 695.13 (1981), it is imperative that OSLA ascertain that nothing has occurred and that nothing will occur and will result in a loan, purchased by it as a secondary market, being insured for less than 100 percent by the Secretary of Education.
 II
Your second question is whether OSLA may make loans to parents of students where the proceeds will be used for the students' education. These loans are referred to as PLUS loans. You refer to two statutes, 70O.S. 695.6 and 70 O.S. 695.17 (1981). 70 O.S. 695.6 provides:
 "The amount of any loan to a qualified student shall be determined according to regulations promulgated by the Student Loan Authority. No payment shall be made to any qualified student until he has executed a note, insured by the United States and payable to a fund which shall be created to be known as the `Student Loan Sinking Fund,' for the full amount of the loan and interest thereon. For the purpose of the Oklahoma Student Loan Act, a qualified student has the capacity to contract and is bound by any contract executed by him; the defense that he was a minor at the time he executed a note is not available to him in any action arising on his note. Payments to qualified students executing notes may be made annually, semiannually, quarterly, monthly or for each semester as determined by the participating institution, depending upon the demonstrated capacity of the student to manage his financial affairs. The rate of interest charged the student shall not exceed the maximum authorized by federal regulations. Disbursements may be made to a participating institution pursuant to a contract between the fiscal agent and the participating institution executed under the Oklahoma Student Loan Act."
70 O.S. 695.17 provides:
 "The Oklahoma Student Loan Authority and the Oklahoma State Regents for Higher Education functioning as the fiscal agent for the Authority in the administration of the Oklahoma Student Loan Act (Chapter 125, Oklahoma Session Laws 1972; 70 O.S. 695.1 to 70 O.S. 695.16 (1975)) shall have authority to make loans to qualified students under provisions of said act if the loans are insured or coinsured by the United States under either Title IV-A or Title IV-B of the Higher Education Act of 1965, as amended." (Footnote omitted).
You indicate in your request that PLUS loans are insured under the successor sections of Title IV of the Higher Education Act of 1965. Given this fact, it would appear that such loans could be made by OSLA. However, this conclusion overlooks the requirement in both 70 O.S. 695.6
and 70 O.S. 695.17 that OSLA make loans to qualified students. 70 O.S.695.2(4) defines a qualified student as:
 "a person who has been accepted for enrollment or who is enrolled in a participating institution and who is otherwise eligible for a student loan insured by the United States."
This definition does not include parents. Thus, PLUS loans to parents of students cannot be made by OSLA. However, Section 683.10[34-683.10] of Title 34 of the Code of Federal Regulations defines borrowers of PLUS loans as including "[a] graduate or professional student, an independent undergraduate student, or one or more of a dependent undergraduate student's parents[.]" OSLA is only prohibited from making PLUS loans to the parent(s) of a dependent undergraduate student. It may make such loans to the two other qualified participants, if such limited participation is permitted by the federal law and regulations.
 III.
In your third question, you ask whether OSLA may fund Health Education Assistance Loans (HEAL) insured by the Secretary of Health and Human Services, pursuant to Sections 727-739 of the Public Health Service Act (codified at 42 U.S.C.A. 294 et seq.). You note that 70 O.S. 695.17 of your act authorizes OSLA to make loans to students if the loans are insured by the United States under either Title IV-A or Title IV-B of the Higher Education Act of 1965 as amended (codified at 20 U.S.C.A. 1070). OSLA's act is silent as to loans insured by the United States pursuant to any other acts. You ask, however, whether 70 O.S. 695.16 (1981) authorizes OSLA to fund such loans. 70 O.S. 695.16 provides:
 "Notwithstanding any provisions of this act, the Authority may adopt such rules and regulations as they deem necessary in order to comply with federal laws and regulations governing the Federally Insured Student Loan Program." (Footnote omitted).
A state agency has only the powers granted by the statutes applicable to it and the authority to make rules to carry out those powers does not mean that an agency by rule making can extend its powers beyond those granted by statute. Oklahoma Alcoholic Beverage Control Board v. Moss,509 P.2d 666, 668 (Okla. 1973). Thus, OSLA may not adopt rules and regulations to authorize it to fund HEAL loans unless such loans qualify under 70 O.S. 695.17 (1981). It appears that such loans would not. Moreover, a plain reading of 70 O.S. 695.16 reveals that it applies only to the Federally Insured Student Loan Program (FISLP) in 20 U.S.C.A. 1071
et seq., not the HEAL program in 42 U.S.C.A. 294 et seq.
 IV.
In your last question, you ask whether OSLA may acquire HEAL loans as an investment pursuant to 70 O.S. 695.13 (1981). This question is governed by the same analysis found in Part I of this opinion, and the answer is subject to the same conditions.
It is, therefore, the official opinion of the Attorney General that:
 1. The Oklahoma Student Loan Authority, pursuant to 70 O.S. 695.13 (1981), may acquire Guaranteed Student Loan Program and Federally Insured Student Loan Program loans that are 100 percent insured by the United States Secretary of Education against loss in the event of default.
 2. Provided such limited participation is permitted by federal law and regulations, the Oklahoma Student Loan Authority may make PLUS (Parent-Student) loans to graduate and professional students and independent undergraduate students, but it cannot make such loans to parents of dependent undergraduate students. See 70 O.S. 695.2, 70 O.S. 695.6, and 70 O.S. 695.17 (1981).
 3. The Oklahoma Student Loan Authority may not make Health Education Assistance Loans (HEAL) because they are not insured under Title IV of the Higher Education Act of 1965.
 4. The Oklahoma Student Loan Authority, pursuant to 70 O.S. 695.13 (1981), may acquire HEAL loans that are 100 percent insured by the United States Secretary of Health and Human Services in the event of default. See 42 U.S.C.A. 294 et seq., and amendments and regulations thereto.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
GEORGE R. BARR, JR., ASSISTANT ATTORNEY GENERAL DEPUTY CHIEF, CIVIL DIVISION